State vs Bildstein et al.

---

No. 10,981.

STATE OF LOUISIANA VS. F. BILDSTEIN, P. J. KELLY AND ALEXANDER CARUTHERS.

. The discretion of a trial judge in dealing with motions for new trial, on the the ground of insufficiency of the evidence administered to justify the verdict, will not be interfered with unless it clearly appears to have been exercised in an arbitrary and unjust manner.

2. A motion in arrest of judgment, alleging an indictment to be bad, because it is not *wholly written*, can not be maintained, as such an averment does not go to the *substance* of the charge, but is directed against the *form* of the indictment.

3. In case a demurrer has been filed and disposed of, antecedent to trial, and no bill reserved, questions which could have been raised and decided on such demurrer are conclusively set at rest.

APPEAL from the Criminal District Court for the Parish of Orleans. *Marr, J.*

---

*W. H. Rogers*, Attorney General, for the State, Appellee.

*A. D. Henriques* for Appellants:

Where the motion for a new trial presents mixed questions of law and fact, and a bill of exception has been retained to the overruling of the motion, and the evidence offered on the trial is embodied in the bill or annexed thereto, the Supreme Court will consider and determine it. State vs. Green Red, alias Green Redding, 32 An. 819; State vs. Nelson, 32 An. 842; State vs. Cyrus Hudson, 32 An. 1052; State vs. Sylvester Miller, 36 An. 158.

Witnesses are to be examined only as to matters of fact within their own knowledge, whether they consist of words or actions. Inferences, or conclusions which may be drawn from facts, are ordinarily to be drawn by the jury alone "except when the conclusion is an inference of skill or judgment." Greenleaf on Evidence, Vol. 1, Secs. 434, 440; Taylor on Evidence, Vol. 2, Secs. 1414 and 1415; Wharton Crim. Evidence, Secs. 455, 456 and 457; State vs. Ross, 32 An. 854; State vs. Parce, 37 An. 268.

A witness can not be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence. Greenleaf on Evidence, Vol. 1, Sec. 449; Taylor on Evidence, Vol. 2, Sec. 1435; Wharton Crim. Evidence, Sec. 484.

In Louisiana, the forms of indictment, the method of trial, rules of evidence, and all other proceedings in the prosecution of crimes must be according to the common law of England as it existed in 1805, unless otherwise provided. Acts of 1805 and 1855; R. S , Sec. 876; 8 R. 545.

An indictment is "A written accusation of one or more persons, of a crime or misdemeanor, preferred to and presented by a grand jury upon oath " Blackstone, Vol. 4, Sec. 302; 2 Hale, 152; 1 Chit. Cr. Law, 168; Bouvier's Law Dictionary, Vol. 1 verbo "Indictment;" American and English Encyclopedia of Law, Vol. 10, title "Indictment;" Bishop Crim. Pro., Vol. 1, Sec. 131; Wharton Crim. Plead. and Prac , Sec. 86, p. 87; Com. vs. Tarbox, 1 Cush. 66.

The caption forms no part of an indictment and is not essential to its validity, Territory vs. McFarlane, 1 M. 221; State vs. Kennedy, 8 R. 590; State vs. Marion. 15 An. 495; Wharton Crim. Plead. and Prac., Sec. 91, 1; Bishop Crim. Pro., Sec. 661

---

The opinion of the court was delivered by

WATKINS. J. The accused defendants were indicted and convicted of the crime of libel, and were each sentenced to pay a fine of five hundred ($500) dollars and suffer imprisonment in the parish prison for a term of six months; and from this sentence and decree they have appealed, relying on an exception taken to the ruling of the trial judge, declining to grant them a new trial, and on our refusing to sustain their motion in arrest of judgment.

## I.

The motion for a new trial is quite elaborate and contains a full and complete *résumé* of the facts adduced at the trial, by the witnesses, upon which the complaint of the accused is predicated, viz.: "That the jury who tried this case disregarded the evidence offered

by these defendants, and did not consider said evidence in arriving at their verdict," etc.

Prefatory to the foregoing conclusion is the statement "that the said verdict is clearly contrary to the law and the evidence; that the evidence and the testimony of the witnesses for the State did not establish, beyond a reasonable doubt, the truth of the charges as contained in the bill of indictment herein presented; and that the jury withheld from the accused the benefit of said reasonable doubt, upon the evidence heard upon the trial, and which reasonable doubt should have been given them by said jury," etc.

The trial judge assigned no reasons for refusing the application, and none are recited in the defendant's bill of exception. And there are none apparent upon the face of the motion, including the evidence that purports to have been incorporated therein. It presents a simple question of the *sufficiency* of the evidence upon which the jury found and rendered their verdict; and of which the *only* complaint defendants make is that the evidence adduced did not establish, *beyond a reasonable doubt*, the truth of the charges preferred against them in the indictment, and that the jury withheld from them in their deliberations the benefit of that reasonable doubt, to their prejudice and injury.

It seems perfectly apparent to us that this was a question for the trial judge, *exclusively;* one in the decision of which he is given, by law, a sound legal discretion, because he presided at the trial, saw and heard the witnesses testify, and was fully capacitated to judge of the sufficiency *vel non* of the testimony, as a whole, to warrant the finding of the jury.

While it is equally correct, as matter of law, for this court to examine testimony annexed to and brought up with a bill of exceptions, for the *simple and only* purpose of determining a question of law—which in this case happens to be an alleged misdiscretion of the trial judge—our opinion and decree must rest upon the *act* of the judge in determining the question presented, and *must decide,* not whether the verdict of the jury was erroneous, but whether the trial judge's ruling was obviously and manifestly incorrect in holding that it was not.

In State vs. Donald, 44 An., we held as follows, viz.: "In the rejection or disallowance of a new trial, particularly in a case resting upon the *sufficiency* of the evidence administered at the trial to justify

a conviction, much reliance must be placed upon the discretion of the trial judge; and his rulings will not be reversed except in very clear cases of error."

In State vs. Beck, 41 An. 584, we said that the action of the district judge in refusing a new trial would "not be reversed in the absence of a showing that (he) had abused his discretion, to the detriment of the accused."

In State vs. Dunn, 41 An. 610, we said "the discretion of trial judges in dealing with motions for a new trial on the ground of newly discovered evidence, even to the extent of their refusing to believe the affidavit of an alleged newly discovered witness, will not be interfered with on appeal, unless it *clearly* appears to have been exercised in an arbitrary and unjust manner."

In State vs. Deschamps, 42 An. 567, we held that this court "will not revise the refusal of the lower court to grant a motion for a new trial, based *solely* on an alleged deficiency of evidence to make out a case."

In State vs. McFarlane, 42 An. 803, we held that "the granting of new trials, on the ground that there was an insufficiency of evidence before the jury to justify a conviction, rests in the sound legal discretion of the trial judge, and its exercise will not be disturbed, except for grave and serious reasons assigned."

We feel quite sure that no such reasons are assigned in the motion under consideration, as there is no pretence of the trial judge having exercised the discretion vested in him, in an arbitrary or unjust manner. The motion was correctly denied.

## II.

The motion in arrest of judgment avers (1) "that the indictment, and all matters had therein, on said indictment, are absolutely null and void in law. That there is no legal and proper indictment herein found by the grand jury;" and (2) "that what purports to be the indictment herein is of no legal efficacy and value in law, for this: that the indictment herein is not a *written* accusation on oath by a grand jury, but that, instead of being a written accusation, the pretended indictment herein is a formation of words on paper, by means of a stamp, and is not *written*, as is required by law," etc.

This objection is evidently an afterthought, framed by counsel who appeared for the accused *after the trial* and conviction of the

accused, and is altogether without merit, as it does not go to the *substance* of the charge against the accused, but is directed against the *form* of the indictment. Had the accused desired to avail themselves of any possible advantage that might accrue to them on that account, they should have filed, *in limine*, a motion to quash the indictment, and having failed so to do, the defect, if any, was cured.

The judge in assigning his reasons for refusing to sustain the motion and arrest the judgment stated that the charge in the original indictment was in *writing*, but that the newspaper article, which is alleged to have constituted the libel, was a clipping from the journal in which it was first published, which was pasted into the body of the indictment; hence it is manifest that the defendants' complaint is of *this printed* matter being in the indictment, and not that the *matter* constituting the libellous article was *not physically incorporated* into the indictment at all.

Even if the question be deemed a proper one for our consideration, it seems to be clear that the complaint is without merit.

The case of Commonwealth vs. Tarbox, 1 Cushing, 66, cited by our learned brother of the district bench, seems to be apposite, and sufficient authority for his ruling.

That was a case of libel, and the indictment contained a *printed* copy of the alleged libellous publication, just as the indictment in the instant case does, with this distinction, that in the case of Tarbox there was no averment in the indictment to the effect that the printed extract so attached " is in the *very words* of the publication " and on that ground the indictment was held defective and void.

But the averment of the indictment in this case declares that the defendants unlawfully did *write, print and publish* a certain false, scandalous and maliciously defamatory libel of and concerning one Mistress J. H. McFarlane, *which said libel is as follows*, that is to say," etc. And immediately succeeding that averment is the article which was clipped from the newspaper, accompanied by cuts and illustrations. Then the indictment is thus concluded, viz.:

" And the grand jurors aforesaid, upon their oaths, do further present that at the time the said defendants (naming them) wrote, printed and published the *said* false, scandalous and maliciously defamatory libel, they * * knew the same to be false."

The language of the indictment, viz.: "did *write, print and publish* a certain false, scandalous and maliciously defamatory *libel* * * *

*which said libel is as follows,"* with the article *physically incorporated into the indictment itself,* appears to have been the best possible mode of exhibiting the *corpus* of the libel to the attention of the court and jury; for it was the *identical thing* itself. No mere *written* words could have so fully and distinctly portrayed the enormity of the offence charged as the printed article that had been first *written,* and then *published* to the world, accompanied by cuts and illustrations. In that form its complete identity could have been easily established by comparison made with the files of the newspaper establishment.

But if there were any doubts of the correctness of this proposition, it would be a sufficient answer to the motion in arrest that the defendants appeared and filed a demurrer, preliminarily, without mentioning the objections presently urged, and that demurrer was overruled and defendants' counsel retained no bill of exceptions to the ruling; and the consequence is, that, in so far as concerns matters of form, that demurrer and the ruling thereon are necessarily. fatal to present pretensions. The motion in arrest was correctly denied.

Judgment affirmed.